USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/22/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MEI YUE GAO,

                            **Plaintiff,**

          -against-

GRACEFUL SERVICES, INC., et al.,

                            **Defendants.**

-----------------------------------------------------------X

18-CV-4005 (SN)

**OPINION AND ORDER**

**SARAH NETBURN, United States Magistrate Judge.**

      Plaintiff Mei Yue Gao ("Gao") sues her former employers Graceful Services, Inc. ("Graceful I") and Grace Macnow ("Macnow"), as well as Graceful II Service ("Graceful II") (collectively, "Defendants"). Gao alleges Defendants committed various labor law violations under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 and § 200 *et seq.*; and discriminated against her in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-107 *et seq.*; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* See ECF No. 34 (hereinafter "Compl.").

      Graceful II moves to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 46 (hereinafter "Def. Motion"). Graceful II argues that Gao does not state a claim for Graceful II's successor liability for alleged violations by Graceful I or Macnow. See ECF No. 47 (hereinafter "Def. Mem.") at 4-12. Graceful II also argues that the ADEA claim is time-barred as to Graceful I, that the Court should decline supplemental

1

jurisdiction over the state and city discrimination claims, and that Gao does not state a claim for relief under any discrimination law for Graceful II's failure to hire her.[1] See Def. Motion.

For the following reasons, Graceful II's motion to dismiss is DENIED in part and GRANTED in part.

## BACKGROUND

**I.      Factual Allegations**

The Court assumes the facts alleged by Gao in her pleadings to be true for the purposes of deciding this motion to dismiss. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). The Court does not consider additional facts alleged by the plaintiff in her opposition that do not appear in her pleadings. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

**A.    Gao's Claims Against Graceful Services**

Graceful I operated a spa known as "Graceful Services" located in Manhattan, New York, from a date unknown until December 2017, when Graceful II formally acquired ownership of and began operating the spa. Graceful I employed Gao as a massage therapist at the spa beginning in 2012. Compl. ¶¶ 3, 14.

**1.    Allegations of Wage Violations**

Gao worked at Graceful I from 2012 until her termination in 2017. Compl. ¶¶ 38, 55, 60. When Gao agreed to begin work for Graceful I in 2012, Graceful I promised in writing to pay

---

[1] Gao has withdrawn the portion of her ADEA claim alleging Graceful II improperly failed to hire her based on her age. See Compl. ¶ 125; Pl. Opp. at 13. Without specific guidance from either party in its brief, the Court construes Gao's withdrawal of her direct ADEA claim against Graceful II to include a withdrawal of any and all claims against Graceful II on a theory of successor liability for Graceful I's alleged wrongful termination under either the ADEA, the NYCHRL, or the NYSHRL, because of the intertwined nature of the those potential claims. See Compl. ¶¶ 113-14, 119-120, 125. However, as Gao clarifies in her opposition to this motion, she retains the claims for failure to hire against Graceful II on a theory of successor liability under the NYSHRL and the NYCHRL. See Pl. Opp. at 13.

Gao $20.00 per hour for 20 hours of work per week. Id. ¶ 40. Gao alleges that throughout her employment at Graceful I, however, she worked as many as 12 hours per day and 60 hours per week performing massages and other cleaning and maintenance tasks at the spa. Id. ¶¶ 1-2. Graceful I required Gao and other massage therapists employed by the company to arrive at the spa between 9:00 and 11:00 a.m. and to work until 9:00 or 10:00 p.m. Id. ¶ 43. Gao claims that she was not paid for (1) any work other than massages, such as cleaning, maintenance, and time she was required to remain on the premises (which together totaled well over half of the hours she worked); or (2) any work in excess of 40 hours per week. Id. ¶¶ 2, 45-47. Combined, this resulted in Graceful I's non-payment of approximately 35 to 40 hours of work each week over the course of five years. Id. ¶¶ 38, 45, 55.

### 2. Allegations of Age Discrimination

Gao also claims that due to her age (62 years old at the time of her complaint), supervisors at Graceful I regularly assigned her to perform fewer massages than her coworkers. Compl. ¶ 3. Because she was paid only for the time performing massages, this discriminatory assignment caused her to receive reduced wages. Id ¶ 3. When Gao raised this issue with Macnow and requested additional massage assignments, Macnow told Gao not to complain because Gao was "so old" she was "lucky to even have a job." Id. ¶ 57. Gao also claims that near the end of 2015, a manager named Nancy told Macnow "the company [had] to get rid of these old people," referring to Gao. Id. ¶ 58.

### B. Successor Liability as to Graceful II

Gao alleges that near the end of December 2017, Graceful I closed the business temporarily before resuming substantially the same operations as "Graceful II" less than one week later. Compl. ¶ 28. Upon Graceful II's re-opening of the spa, Macnow, who had an

ownership interest in Graceful II and continued hiring and firing authority, told Gao not to return to work. Id. ¶ 60. Graceful II continued to operate the spa under the name "Graceful Services" at same the location as the prior spa, 1095 2nd Avenue, Floor 2, New York, NY, 10002. Id. ¶ 29. Graceful II offered the same products—massages, facials, body scrubs and waxing—as Graceful I, using Graceful I's furniture and products. Id. ¶¶ 26, 29. With the exception of Gao, Graceful II employed the same individuals as Graceful I, including managers Sherry and Nancy,[2] and used Graceful I's online employee portal for employee management. Id. ¶¶ 31, 32, 33, 35. Graceful II used the same website as Graceful I to promote its business to the public. Id. ¶ 34.

## DISCUSSION

The complaint alleges: (1) minimum wage violations under the FLSA and the NYLL (Counts I & IV); (2) overtime compensation violations under the FLSA and the NYLL (Counts II & V); (3) unpaid promised wages under the NYLL (Count III); (4) spread-of-hours pay violations under the NYLL (Count VI); (4) wage notice and wage statement violations under the NYLL (Count VII); and (5) age discrimination violations under the NYSHRL, NYCHRL, and ADEA (Counts VIII, IX, & X). Compl. ¶¶ 70–127.

Graceful II argues that the Court should dismiss Counts I through VII of the complaint as Gao fails to state a claim for Graceful II's successor liability vis-à-vis Graceful I. See Def. Motion; Def. Mem. at 4-12. Graceful II also argues that the Court should dismiss Counts VIII through X of the complaint because: (1) Gao's ADEA claim is time-barred as applied to Gao's underlying allegations against Graceful I (2) the dismissal of Gao's ADEA claim additionally warrants dismissal of Gao's supplemental state and city claims on jurisdictional grounds; and (3)

---

[2] In the complaint, Gao refers to these two individuals by first name only.

Gao does not state a claim of discrimination based on Graceful II's decision not to employ her. Def. Mem. at 13.

## I.     Rule 12(d)

As a threshold issue, Graceful II submits more than fifty pages of supplemental information in support of its motion. ECF Nos. 48-49 (Affidavit of Meng Ling, Affirmation of Ge Qu & Exhibits A-H). Rule 12(d) gives district courts two options when a party presents matters outside the pleadings on a motion to dismiss under Rule 12(b)(6): a court may either (1) exclude the additional material and decide the motion on the complaint alone; or (2) convert the motion to one for summary judgment under Rule 56 and afford all parties the opportunity to present supporting material. Fed. R. Civ. P. 12(d). The Court excludes Graceful II's additional material and rules on the motion without considering it.

## II.     Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). But a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570. Further,

5

"complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

In determining the sufficiency of a complaint, the Court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which the plaintiffs had knowledge and relied on in bringing suit." Brass, 987 F.2d at 150.

## III. Successor Liability for Labor Claims

In its motion to dismiss, Graceful II argues there is no successor liability between Graceful I and Graceful II and that therefore all claims against Graceful II that stem from acts or omissions committed by Graceful I should be dismissed. Def. Mem. at 2. The Court of Appeals for the Second Circuit has not established the proper test for successor liability in the FLSA context. See Battino v. Cornelia Fifth Ave., LLC, 861 F. Supp. 2d 392, 400 (S.D.N.Y. 2012). Federal courts sitting in New York therefore employ either a New York common law standard (the "traditional test") or a "substantial continuity" test in determining whether a defendant may be held liable for a previous employer's labor law violations. See Xue Ming Wang v. Abumi Sushi, Inc., 262 F. Supp. 3d 81, 87-89 (S.D.N.Y. 2017). Because dismissal is not appropriate under either standard, the Court need not decide which test applies to FLSA claims.

### A. Traditional Test

Under New York law and traditional common law, "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003). A successor corporation may,

6

however, be held liable for the obligations of its predecessor if any of the following conditions are present: "(1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations." New York v. Nat'l Serv. Indus., Inc. ("NSI"), 460 F.3d 201, 209 (2d. Cir. 2006) (quoting Schumacher v. Richards Sheer Co., 59 N.Y.2d 239, 245 (1983)). As to the first factor of the traditional test, Gao does not allege that Graceful II expressly or impliedly assumed Graceful I's tort liability. As to the fourth factor of the traditional test, Gao does not allege that any ownership transaction involving Graceful II was entered into fraudulently to escape liability. Gao does, however, plausibly state that it was Graceful II's intent to continue Graceful I's operations amounting to a merger or mere continuation of the selling corporation.

Courts in this circuit have held that the "*de facto* merger" and "mere continuation" exceptions—(2) and (3) above—are "so similar that they may be considered a single exception." Cargo Partner AG, 352 F.3d at 45 n.3 (citing cases); see also Battino, 861 F. Supp. 2d at 401 (applying the same four-factor test to the *de facto* merger and continuity of ownership claims under the traditional test). To determine whether a mere continuation or a *de facto* merger has occurred, courts consider the following factors: "(1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets and general business operation." NSI, 460 F.3d at 209. These factors should be "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the

7

predecessor." Nettis v. Levitt, 241 F.3d 186, 194 (2d Cir. 2001), overruled on other grounds, Slayton v. Am. Express Co., 460 F.3d 215 (2d Cir. 2006) (internal quotations omitted). While the factors are not to be analyzed in a purely rigid manner, this Court has noted that "continuity of ownership is the essence of a merger." Franco v. Jubilee First Avenue Corp., No. 14-CV-07729 (SN), 2016 WL 4487788, at *8 (S.D.N.Y. Aug. 25, 2016) (quoting Cargo Partner AG, 352 F.3d at 47). This continuity of ownership may, however, be imperfect, "as long as there is at least partial commonality of ownership between the predecessor and successor organizations." Id.

Regarding the first prong of the *de facto* merger test, Gao alleges there was continuity of ownership between Graceful I and Graceful II as Macnow held a 100% ownership interest in Graceful I as well as a continuing partial ownership interest (of an unspecified proportion) in Graceful II. Compl. ¶¶ 17-18. See Franco, 2016 WL 4487788, at *8 (holding that an employer who held 100% ownership interest in the predecessor business and a one-third interest in the successor business satisfied the continuation of ownership prong of the *de facto* merger test). Regarding the second prong of the *de facto* merger test, Gao suggests there was a cessation of ordinary business and implies a dissolution of Graceful I quickly thereafter because Graceful I closed merely "several days" before Graceful II opened for business using the same premises (including many of Graceful I's physical assets), with at least one continued owner (Macnow). Compl. ¶¶ 28-29, 35. See NSI, 460 F.3d at 209 (noting that "cessation of ordinary business and dissolution of the acquired corporation as soon as possible" are "hallmarks" of a *de facto* merger). Gao does not allege Graceful II assumed Graceful I's "liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation." Gao does, however, claim significant "continuity of management, personnel, physical location, assets and general business operation" between Graceful I and Graceful II. Compl. ¶¶ 29-30, 34-35. Sherry

8

and Nancy, former managers at Graceful I, became managers at Graceful II. Id. ¶ 32. Macnow retained authority to hire, fire and perform managerial duties at Graceful II. Id. ¶ 33. Graceful II also continued to employ several other massage therapists from Graceful I. Id. ¶¶ 30, 61. Graceful II offers substantially the same services to the public as did Graceful I and utilizes the same furniture and products as Graceful I. Id. ¶¶ 29, 35. Graceful II uses the same public website and private online employee management portal as did Graceful I. Id. ¶ 34. Because the *de facto* merger test requires continuity of general business operations, not complete identity or uniformity in every material characteristic, Gao's allegations tend to support a claim of successor liability under the fourth factor. Franco, 2016 WL 4487788, at *9 (internal quotations omitted).

On balance, because Gao pleads sufficient facts alleging it was Graceful II's intent to absorb and continue the operations of Graceful I, Gao's complaint plausibly establishes successor liability under the traditional test.

### B. Substantial Continuity Test

The substantial continuity test is more flexible than the traditional test and "focus[es] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations." Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 43 (1987). The inquiry is "primarily factual in nature" and based on the totality of circumstances. Id. Courts applying the substantial continuity test generally look to nine factors:

> (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether [it] uses the same or substantially the same work force; (6) whether [it] uses the same or substantially the same working conditions; (8) whether [it] uses the same machinery, equipment,

9

and methods of production; and (9) whether [it] produces the same product.

Franco, 2016 WL 4487788, at *9 (citing Bautista v. Beyond Thai Kitchen, Inc., 14-CV-4335 (LGS), 2015 WL 5459737, at *5 (S.D.N.Y. Sept. 17, 2015)). "No one factor is controlling, and it is not necessary that each factor be met to find successor liability." E.E.O.C. v. Barney Skanska Const. Co., 99-CV-2001 (DC), 2000 WL 1617008, at *2 (S.D.N.Y. Oct. 27, 2000).

Graceful II's argument regarding the substantial continuity test is twofold. First, Graceful II argues that factors (1) and (2)—whether the successor company had notice of the claims and whether the predecessor is able to provide the complainant relief—are "indispensable." Def. Mem. at 5. Second, Graceful II argues that Gao does not sufficiently plead facts establishing either of these factors. Id. at 5-6. Because the Court finds that Gao sufficiently pleads facts establishing factors (1) and (2) (among others), it need not determine whether those factors are "indispensable."

First, Graceful II could not have had notice at the time of the December 2017 transaction that this lawsuit was pending because Gao filed the original complaint in May 2018. See ECF No. 1. Nonetheless, courts in this district have held that "the purchaser need not have actual notice of a pending lawsuit for purposes of the substantial continuity test if the purchaser had knowledge of a violation of law that could give rise to a suit." See Abumi Sushi Inc., 262 F. Supp. 3d at 92. A corporate successor may therefore be liable for certain violations when it had knowledge of its predecessor's acts giving rise to the claims. See Battino, 861 F. Supp. 2d at 407 (holding that in the case of a complete failure to pay wages, successor's prior knowledge of the failure to pay wages alone was sufficient to put that successor on notice of potential liability).

The facts alleged in Gao's complaint, including that Macnow was an owner of Graceful I and a partial owner of Graceful II, supports an inference—drawn in Gao's favor, as it must be at

10

the motion to dismiss stage—that Graceful II had knowledge of the alleged wage and hour violations prior to this suit's filing. To begin, Gao states that Macnow employed Gao at Graceful Services I between 2012 and 2017. Compl. ¶ 11. As the owner of Graceful I, Macnow had certain managerial responsibilities, including hiring and firing. Id. ¶¶ 17, 64. Macnow had the authority to set the terms of Gao's employment and was responsible for determining the salary paid to employees, including Gao. Id. ¶¶ 62-63. Gao further alleges that Macnow had an ownership interest and managerial role regarding Graceful II. Id. ¶ 33. In other words, Gao's theory, as alleged in the complaint, is that Graceful II had actual knowledge of the wage and hour violations because Macnow, a partial owner of Graceful II, was the same owner and manager responsible for those violations against Gao during her employment at Graceful I. Therefore, Gao plausibly states that Graceful II had notice of the claims raised in the Counts I to VII of the complaint and the first prong of the substantial continuity test is satisfied.

Second, Graceful II disputes that Gao plausibly alleges Graceful I's inability to provide relief under the circumstances. Def. Mem. at 10. Gao claims "there is a question" as to Graceful [I]'s ability to provide relief for [Gao's] claims because the company has formally ceased operations. Compl. ¶ 37. Further, the complaint raises a question as to whether the formal business of Graceful I continues to exist. Id. ¶¶ 28-29. See Franco, 2016 WL 4487788, at *10 (finding the "ability of the predecessor to provide relief" factor satisfied where "the [predecessor] company is no longer in operation" even if there is substantial evidence of continuity of the predecessor's business after its closure). For these reasons, the second prong of the substantial continuity test is satisfied.

As to the remaining applicable factors, Gao alleges significant facts supporting assignment of successor liability to Graceful II, as discussed above. See Compl. ¶¶ 29-32, 34-35.

11

Graceful II does not challenge Gao's allegations as to the remaining factors of the substantial continuity test. See Def. Mem. at 4-10. Therefore, based on a totality of the circumstances analysis, Gao plausibly alleges successor liability for Graceful II on Counts I-VII in the complaint. See Franco, 2016 WL 4487788, at *10 (finding successor liability based on a totality of the circumstances analysis under the substantial continuity test when only the first factor was disputed, and all other factors supported substantial continuity of the predecessor business).

## IV. Age Discrimination

### A. Statute of Limitations

As a threshold issue, Graceful II argues that Gao's ADEA claim should be dismissed on the ground that Gao failed to file a charge of discrimination against defendant Graceful I with the Equal Employment Opportunity Commission ("EEOC") within the 300-day limit prescribed by the ADEA. Def. Mem. at 15. Because Graceful II's only liability under the ADEA is successor liability stemming from alleged acts by Graceful I, if Gao's ADEA claim against Graceful I is time-barred, it should be dismissed against Graceful II. Id. In so arguing, Graceful II limits Gao's claim that she received discriminatory massage assignments to a single incident occurring on a date in the "second half of 2015" upon which Gao complained to Macnow about receiving fewer appointments than her coworkers. Id. Measuring time from this date, Graceful II contends that the applicable 300-day window within which Gao must have filed her claim with the EEOC closed before Gao filed the complaint in May 2018. Id.

"The pleading requirements of the Federal Rules of Civil Procedure do not . . . compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007). Instead, "Rule 8 requires a plaintiff to provide only 'a short and plain statement of the

12

claim showing that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8). In states including New York, where a state agency has authority to address employment age discrimination charges, the statute of limitations for filing with the EEOC is 300 days from the date of the discriminatory conduct. See 29 U.S.C. § 626(d)(1)(B); Kassner v. Second Avenue Delicatessen, 496 F.3d 229 (2d Cir. 2007) (describing the applicable 300-day statute of limitations in New York for filing an age discrimination charge under the ADEA with the EEOC).

The issues raised in this motion to dismiss are twofold. The first issue is whether Gao has presented any facts indicating that she filed her charge with the EEOC within the requisite 300-day deadline from the date of any discriminatory conduct by Graceful I. The second issue is whether Gao plausibly alleges a "continuing violation" such that any claims of discriminatory conduct occurring more than 300 days before Gao's EEOC complaint are nonetheless timely alleged by that complaint because they occurred as a continuous practice and policy of discrimination.

### i. Discrimination Within 300 Days Before Gao's EEOC Complaint

Gao alleges that during her employment, she received fewer massage assignments because of her age. Compl. ¶ 3, 54. Gao alleges that she complained to Macnow about this practice in 2015. Id. She does not, however, allege specific dates on which Graceful I or Macnow declined to assign her a particular massage because of her age. Drawing all inferences in favor of Gao, the Court may infer that a pattern of assigning fewer massages to Gao continued well after 2015 based on both Macnow's response to Gao's inquiry and other language in the complaint. Id. ¶¶ 3, 54, 57. For this reason, Gao plausibly claims that Graceful I discriminated against Gao by assigning her fewer massages at some time after August 4, 2017. See Vega v. Hempstead

Union Free Sch. Dist., 801 F.3d 72, 80 (2d Cir. 2015) (ruling that claims of disproportionate work assigned on a discriminatory basis are not time-barred as long as they occur within the statutory period, as "[e]ach incident of discrimination . . . constitutes a separate actionable unlawful employment practice" (internal quotations omitted)). To the extent the complaint alleges discriminatory acts after August 4, 2017,[3] the statute of limitations does not bar those allegations.[4]

### ii. Continuing Violation

When a plaintiff experiences a "continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir.1992) (internal quotations omitted). By contrast, discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation. See, e.g., Lambert v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir .1993), cert. denied, 511 U.S. 1052 (1994). General allegations of an ongoing discriminatory policy do not suffice to invoke the continuing violation doctrine where the "individual effects of the policy that give rise to the claim are merely discrete acts." Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 157 (2d Cir. 2012).

Graceful II contends that any alleged discrimination in massage assignment did not amount to a continuing violation providing exception to the general statute of limitations requirements. Def Mem. at 16. Accordingly, Graceful II argues that any individual instances of

---

[3] This date is 300 days prior to the original filing of the complaint with the EEOC: May 31, 2018. See Compl. ¶ 9.

[4] Because the Court denies the motion to dismiss the ADEA claims, the Court also denies the motion to dismiss the NYSHRL and NYCHRL claims, even to the extent those claims are based on allegations of discrimination occurring before August 4, 2017, because the claims are so related as to serve the purposes of 28 U.S.C. § 1367(a).

discrimination in massage assignment occurring before August 4, 2017, are barred by the statute of limitations. Id. The Court interprets Gao's response to these arguments to state that under the continuing violation doctrine, her claims arising before August 4, 2017, are within the statute of limitations period because they are part of a continuing practice and policy of discrimination, and at least one of the discriminatory acts under that continuing practice and policy occurred after August 4, 2017. See Pl. Opp. at 16.

As discussed above, Gao alleges a specific, recurring practice, permitted (indeed, perpetuated by) Macnow. Based on the facts of the complaint, however, it is not plausible that the isolated decisions whether to assign Gao a particular massage, when taken together, amounted to a discriminatory policy or practice supporting a continuing violation. See Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 239 (2d Cir. 2007) (analyzing case-by-case managerial decisions including assignment of less desirable hours or duties as individual allegations for the purposes of determining the statute of limitations). Gao has conditionally requested leave to amend the complaint in order to plead additional facts in support of her claim of a continuing violation. For the reasons discussed immediately above, the Court grants this request. See Fed. R. Civ. P. 15(a) ("Leave to amend a pleading should be freely granted "when justice so requires."). To the extent Gao claims age discrimination based on reduced massage assignments before August 4, 2017, those claims are time-barred for the purposes of the ADEA and dismissed without prejudice.

**B. Successor Liability**

The analysis in Part III *supra* regarding Graceful II's successor liability for Gao's labor claims, Counts I-VII, applies to the issue of Graceful II's liability for Gao's discrimination claims, Counts VIII-X. See Halpert v. Manhattan Apartments, Inc., No. 04-CV-1850 (RWS),

2015 WL 456594, at *1 (S.D.N.Y. Feb. 3, 2015) (applying the "substantial continuity" test and allowing post-judgment discovery against an alleged successor in interest on an ADEA claim). With regard to the nine factors analyzed under the substantial continuity test, the analysis for factors (2)-(9) above also applies to Gao's discrimination claims. In terms of factor (1), whether the successor company had notice of the charge or pending lawsuit before acquiring the business or assets of the predecessor, Gao also plausibly alleges that Graceful II had actual notice of the discrimination claims relevant to the first factor in the substantial continuity test. Gao claims that she complained to Macnow directly about the unequal distribution of massages and that Macnow not only dismissed Gao's complaint, but told her she was lucky to even have a job because of her age. Compl. ¶ 57. Additionally, a manager told Macnow directly to "get rid of these old people" (referring to Gao). Id. ¶ 58. Here, as above, Gao plausibly alleges that Macnow, as part-owner of Graceful II had actual knowledge of the potential claims against the predecessor business as one of the actors responsible for the discriminatory acts alleged. Id. ¶ 33.

### C. Failure to Hire

Graceful II argues that Gao does not allege sufficient facts to plausibly support that Graceful II declined to hire Gao impermissibly on the basis of her age. See Def. Mem. at 17. Specifically, Graceful II contests whether Gao's complaint raises an "inference of age discrimination." Id. Although Gao withdraws her ADEA claim against Graceful II for failure to hire, the NYSHRL and NYCHRL claims against Graceful II for failure to hire remain. Given that Gao has withdrawn that element of her ADEA claim, the Court assumes that Graceful II's argument that Gao does not plausibly allege age discrimination based on Graceful II's failure to hire applies to Gao's NYSHRL and NYCHRL claims.

At the pleadings stage of an employment discrimination case, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." Vega, 801 F.3d at 87. An inference of discrimination can arise from circumstances including (though not limited to), "the employer's . . . invidious comments about others in the employee's protected group; . . . more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (citation omitted).

As pleaded, Graceful II's actions give rise to an inference of discrimination based on the combination of Macnow's alleged behavior as the owner of Graceful I and subsequent authority to hire as a partial owner of Graceful II. Gao claims she was over 60 years old at the time of her complaint and likely older than all other employees Graceful II hired. Compl. ¶ 53. Gao was qualified to continue working as a massage therapist after approximately five years in employment with Graceful I. Id. ¶ 11. For at least the first three years of Gao's employment (and perhaps longer), she had many repeat customers and received no performance complaints. Id. ¶ 56. Despite these facts, Graceful II did not hire Gao. Id. ¶ 60. As discussed above, Gao states that Macnow controlled personnel decisions for both Graceful I and Graceful II. Id. ¶ 61, 64. Gao claims that Graceful I treated younger employees more favorably by assigning them more income-generating work than Gao. Id. ¶ 57. Graceful I defended such discrimination by telling Gao she should have been grateful to even have a job due to her age. Id. ¶ 57. Gao also heard a manager counsel Macnow to "get rid of these old people," similarly evincing invidious comments about others in the employee's protected group. Id. ¶ 58. Gao was subsequently the

17

only individual not re-hired by Macnow to continue working at Graceful II, again demonstrating more favorable treatment of younger employees. Id. ¶ 61. Taken together, these allegations plausibly support an inference of Graceful II's discrimination against Gao based on her age under New York state and city laws.

## CONCLUSION

For these reasons, the Court DISMISSES without prejudice Gao's ADEA claims for alleged violations before August 4, 2017 (under Count X). Gao may file a second amended complaint no later than November 8, 2019, developing her theory of liability under the ADEA based on a continuing violations theory. Graceful II's motion is DENIED as to all other claims (Counts I-IX). Accordingly, the stay of discovery as to defendant Graceful II entered by the Court's May 1, 2019 Order (ECF No. 62) is LIFTED.

All parties are ORDERED to appear for a status conference on Tuesday, November 12, 2019, at 10:00 a.m. in Courtroom 219, Thurgood Marshall Courthouse, 40 Foley Square, New York, New York.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 46.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    October 21, 2019
               New York, New York